# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Brunswick Division

| | | |
|---|---|---|
| In the matter of: | ) | |
| | ) | Adversary Proceeding |
| JOEL H. SMITH | ) | |
| (Chapter 7 Case Number <u>04-20387</u>) | ) | Number <u>04-2086</u> |
| | ) | |
| *Debtor* | ) | |
| | ) | |
| ALTAMAHA FEDERAL | ) | |
| CREDIT UNION | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOEL H. SMITH | ) | |
| | ) | |
| *Defendant* | ) | |

FILED
at 2 O'clock & 25 min P M.
Date 12-13-04
MICHAEL F. McHUGH, CLERK
United States Bankruptcy Court
Savannah, Georgia

## MEMORANDUM AND ORDER
## ON COMPLAINT TO DETERMINE DISCHARGEABILITY

Joel H. Smith ("Debtor") filed for Chapter 7 bankruptcy protection on March 8, 2004. On June 3, 2004, Altamaha Federal Credit Union ("Plaintiff") filed this adversary proceeding to determine the dischargeability of a portion of the debt that Debtor owes to Plaintiff. The Court conducted a trial on the issue on October 7, 2004. This Court has jurisdiction over this core proceeding under 28 U.S.C. § 157(b)(2)(I) and enters the following Findings of Fact and Conclusions of Law pursuant to Federal Rule of Bankruptcy Procedure 7052.

c: Debtor
Debtor Atty
Plaintiff - ALTAMAHA FCU
Pltf Atty - R. TAYLOR
Defendant - SMITH
Deft Atty - HENRY
Trustee - CARDWELL
U. S. Trustee - JAMES

AO 72A
(Rev. 8/82)

## FINDINGS OF FACT

Debtor had a personal signature loan with Plaintiff. In November 2003, the loan had a $7,500.00 balance. Plaintiff does not dispute that the $7,500.00 portion of the loan is dischargeable. On November 26, 2003, Debtor applied for an additional $2,000.00 loan from Plaintiff, and that advance is the subject of Plaintiff's Complaint. Plaintiff's Exhibit 2. Patti Scarborough, the loan manager, took the application for the $2,000.00 loan over the telephone. Debtor stated that the loan was for the purpose of buying Christmas presents and she wrote the word "Christmas" on one of the loan documents. Plaintiff's Exhibit 3. The computer system in place at the credit union is not capable of including the purpose of the loan on the loan documents, so the Plaintiff's practice is to write the purpose of the loan on the document. Debtor testified that he does not recall the loan manager asking him the purpose of the loan or telling her that the loan was to buy Christmas presents. Plaintiff presented no evidence that it relied on this representation in making the advance.

When Debtor arrived at Plaintiff's office to sign the loan application and receive the loan proceeds, Ms. Scarborough brought the application to a teller window for Debtor to sign. The document with the word "Christmas" written on it was attached to the loan application when Debtor signed it; however, Debtor did not sign the document with the notation. The Debtor and Ms. Scarborough had no conversation regarding the loan or the purpose of the loan at that time. It is uncertain whether Ms. Scarborough gave Debtor a check or directly deposited the loan proceeds in his checking account; however, she did not give the Debtor cash.

Debtor has never bounced a check; however, before he applied for the $2,000.00

AO 72A
(Rev. 8/82)

2

loan, he was concerned that he might. Debtor is a police officer in Jesup, Georgia, and he was afraid he would lose his job if he bounced a check. Debtor testified that he applied for the loan in order to place the money in his checking account as a cushion to cover both outstanding and future checks. This general concern certainly must have included purchases Debtor expected to make during the Christmas season, although he did not limit his concern to those expenses.

When Debtor applied for the $2,000.00 loan, he had a part-time job at Wayne Memorial Hospital where he had been working as a security officer for over 20 years. He regularly purchased prescription drugs from the pharmacy on site and had a balance of $5,000.00 with the pharmacy. The hospital began to pressure him about his balance, and Debtor resigned his part-time position in February 2004.

Plaintiff argues that Debtor applied for the loan in bad faith knowing that his financial situation was declining evidenced by the fact that Debtor received federal and state income tax returns in excess of $1,700.00 and could have paid off this loan prior to the bankruptcy filing. Plaintiff further asserts that Debtor quit his part-time job only three months after taking out this loan.

Debtor testified that it was not until early 2004, after he lost his part-time job and after he received the $2,000.00 loan, when he realized his financial condition was irreversible. Until that point, he believed he could satisfy all of his obligations. After seeking assistance from a credit counselor, Debtor decided his only alternative was to file bankruptcy.

## CONCLUSIONS OF LAW

Plaintiff contends that the $2,000.00 loan should be declared nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B) which provide in relevant part:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-
>
> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by-
>
> (A)  false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>
> (B)  use of a statement in writing-
> (I) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive . . .

In an action to determine the dischargeability of debt, the plaintiff bears the burden of proving by a preponderance of the evidence that a discharge is not warranted. <u>Grogan v. Garner</u>, 498 U.S. 279, 286, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). Moreover, courts should strictly construe exceptions to discharge against the creditor and in favor of the debtor. <u>HSSM #7 Ltd. P'ship v. Bilzerian (In re Bilzerian)</u>, 100 F.3d 886, 891 (11th Cir. 1996).

Although Plaintiff relies on both subsections (A) and (B), these two subsections are mutually exclusive - either the debtor falsely represented his financial situation *in a writing* or

he did not. Georgia Elec. Supply, Inc. v. Helmly (In re Helmly), Ch. 7 Case No. 97-40692, Adv. No. 97-4231, slip op. at 5 (Bankr. S.D. Ga. Sept. 28, 1998)(Davis, J.)(citing 124 Cong. Rec. 11, 095-6 (daily ed. Sept. 28, 1978)). Plaintiff does not dispute that Debtor accurately represented his income and his assets and liabilities at the time of the loan application. Instead, Plaintiff introduced a computer print out bearing the loan officer's handwritten notation of "Christmas" and asserted that this constituted a writing in which Debtor falsely represented his financial picture to the loan officer. The Court does not find that the notation, which the Debtor may or may not have seen, constitutes a writing respecting the Debtor's financial condition. Thus, the Section 523(a)(2)(B) argument fails, and the question of a false representation should be analyzed under Section 523(a)(2)(A).

In order to prevail on a Section 523(a)(2)(A) claim, the creditor must prove the following elements: (1) the debtor made a false representation with the intent to deceive the creditor; (2) the creditor relied on the representation; (3) the creditor's reliance was justified; and (4) the creditor sustained a loss as a result of the representation. In re Bilzerian, 100 F.3d at 892. Failure to prove any one of these elements will result in the Plaintiff's claim being declared dischargeable. This Court finds that Plaintiff has failed to satisfy its burden of proof under Section 523(a)(2)(A).

The first element of a Section 523(a)(2)(A) claim is that the debtor made a false representation with the intent to deceive the creditor. The Court looks to the totality of the circumstances to determine whether the debtor made the misrepresentation with the intent to deceive. In re Helmly, slip op. at 6. This Court has held that a statement of future intention is not necessarily a misrepresentation. Id. If Debtor said he intended to use the cushion in his checking account to purchase Christmas presents and his financial circumstances deteriorated such that he was unable

AO 72A
(Rev. 8/82)

5

to do so, then that does not constitute a misrepresentation. More importantly, the burden of proving Debtor's intent to deceive rests with the Plaintiff. Plaintiff produced no other evidence that Debtor used any trickery or was dishonest in any of his disclosures to Plaintiff.

The second element of a Section 523(a)(2)(A) claim is that the creditor relied on the representation. Plaintiff presented no evidence that when it extended the loan it relied on Debtor's representation that the purpose of the loan was for Christmas presents. Further, Plaintiff presented no evidence that it would have denied the loan if the Debtor said he needed the loan as a cushion in his checking account. Because the Plaintiff failed to satisfy the first two elements of a Section 523(a)(2)(A) claim, it is unnecessary to examine the remaining elements.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtor's $2,000.00 debt to Plaintiff is DISCHARGEABLE.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 10th day of December, 2004.